## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

KAREN M. CHAVEZ,

       Plaintiff,

v.                                              No. CIV 00-364 BB/WWD

THE UNIVERSITY OF PHOENIX,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of Defendant's motion for summary judgment (Doc. 27). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that the summary-judgment motion will be granted in part and denied in part.

Plaintiff was employed by Defendant for approximately eight months. This Title VII lawsuit arises out of an instance in which Plaintiff was informed she would not be considered for promotion, because she allegedly did not have the necessary qualifications for the position she sought. In addition, Plaintiff claims Defendant retaliated against her after she complained that the failure to consider her for promotion was motivated by gender discrimination. Plaintiff also maintains the failure to consider her for promotion was a breach of the covenant of good faith and fair dealing that is inherent in all contracts of employment other than at-will agreements. Defendant has moved for summary judgment on all claims.

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker

State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendant's motion in light of these standards.

**Factual Summary[1]**

The facts, viewed in the light most favorable to Plaintiff, are as follows. Plaintiff was employed by ITT Technical Institute, performing the duties of an enrollment counselor ("EC"), for almost two years. Her performance during that time was considered outstanding, according to her supervisor. In October 1998, Plaintiff learned that ECs employed by Defendant could earn as much as $60,000 or $80,000 per year. This was substantially more than she was earning with ITT, and she decided to pursue a position with Defendant. At the time, however, the only position open was a position as Associate Enrollment Counselor ("AEC"). This position was a step down for Plaintiff, both in terms of salary and in terms of job responsibilities. At her interview with Defendant's representative, Brian Lindquist, Plaintiff made known her desire to move into an EC position as quickly as possible. She also asked Lindquist if her lack of a college degree would prevent her from obtaining an EC position. Lindquist assured her that her prior work experience qualified her for an

---

[1]These facts are drawn from Plaintiff's affidavit, her deposition, and other materials attached to Defendant's submissions and Plaintiff's response brief.

EC position; that she would be considered for such a position equally with other applicants; that a college degree was no longer a "requirement" for the EC position; and that even when such a degree had ostensibly been required, exceptions had been made for individuals who had equivalent work experience. Plaintiff agreed to accept the AEC position, and left her employment with ITT, taking a salary cut in the process.

In March 1999, four and one-half months after Plaintiff started working for Defendant, an EC position came open. Plaintiff indicated her interest in the position to Lindquist, and asked if she needed to turn in another resume or do anything else in order to be considered for the position. Lindquist replied, "No, I'll take it from here. Just keep those great numbers coming." On March 29, Lindquist informed Plaintiff that she would not be considered for the position because she did not have a degree and was not reasonably close to obtaining one. Plaintiff was not happy with this decision and complained about the fact that males who were in the same position as she was were hired as ECs, and she was not even considered.

Subsequently, Plaintiff was asked if she would transfer to an AEC position at Kirtland Airforce Base, where she would have an opportunity to "strut her stuff," according to her supervisor. The position turned out to be a disaster, from Plaintiff's point of view. Plaintiff was required to perform the duties of an EC at times, as well as other duties not expected of an AEC; she was reprimanded for being late to work even though her supervisor, understanding her needs as a single mother, had authorized her tardiness; and she was reprimanded for being out of the office even though she was attempting to enroll a prospective student. After remaining in this position for a few weeks, Plaintiff requested a transfer back to the main campus, but was told she would not be granted such a transfer. In June 1999, Plaintiff quit her job with Defendant and went back to work for ITT, in a job her former supervisor essentially created for her because he was so eager to have her return

to work for ITT.  After Plaintiff left her position with Defendant, a woman with a college degree was hired to fill the EC position Plaintiff had applied for in March.

**Discussion**

**Discrimination Claim:**  Plaintiff maintains that Defendant's failure to even consider her for the promotion to EC was motivated by gender bias.  To make a prima facie showing of discriminatory failure to promote under the familiar *McDonnell Douglas* test, Plaintiff must show four things:  (1) she belongs to a protected gender; (2) she applied and was qualified for the promotion; (3) despite her qualifications, she was rejected; and (4) the position remained open, or a different individual was selected for the position.  *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 796-97 (10th Cir. 1993), *overruled on other grounds*, *Buchanan v. Sherrill*, 51 F.3d 227 (10th Cir. 1995).


Defendant argues strenuously that Plaintiff cannot establish a prima facie case of discrimination because a woman was hired for the EC position.  According to Defendant, an additional element of the prima facie showing set out above is a requirement that the position be filled by a male. This argument is contrary to Tenth Circuit authority.  *See Perry v. Woodward*, 199 F.3d 1126, 1138 (10th Cir. 1999) (fourth requirement of prima-facie-showing test is met if plaintiff shows someone was hired to replace him; not required to prove that person hired was member of different racial or gender group than plaintiff).  As *Perry* points out, Defendant's argument would preclude a claim where an employer, having initially discriminated against an applicant, turns around and hires a different applicant of the same gender, to avoid a lawsuit.  The timing of the events in this case would have allowed for such action by Defendant – Plaintiff applied for the EC position, was told she would not be considered for the position, and complained she was being discriminated against.  Subsequently, Defendant hired a woman for the position.  It would therefore have been possible for

4

Defendant to do exactly what *Perry* holds should not be allowed.[2]  Given the holding and logic of *Perry*, the Court must reject Defendant's argument on this point.

Defendant also argues Plaintiff was not qualified for the EC position, due to the fact she did not have a bachelor's degree and was not reasonably close to obtaining one.  As discussed below, however, there is a question of fact as to whether the degree requirement was an actual requirement for the position, and whether the requirement was imposed more strictly on females than on males.  Accordingly, there is a fact issue as to whether Plaintiff was qualified for the position.

Defendant maintains Plaintiff cannot make out a prima facie showing of discrimination because the woman hired for the position had greater qualifications than did Plaintiff, inasmuch as she had a degree.  This argument fails for two reasons:  first, there is no evidence that any comparison of Plaintiff's qualifications and the hiree's qualifications was ever performed; Plaintiff was simply told, as soon as she applied, that she would not be considered for the position because she had no degree and was not reasonably close to obtaining one.  The EC position was not even filled until Plaintiff had already left her employment with Defendant.  Thus, it is the refusal to consider her application at all that is the basis of Plaintiff's discrimination claim, not the hiring of a different person for the position.  Second, as discussed below, there is a question of fact as to the extent to which a degree would override other qualifications such as experience in the field and competence as a salesperson.  At this point, therefore, there is a question of fact as to whether the person hired for the EC position truly was "more qualified" than Plaintiff.[3]

---

[2]The Court is definitely not suggesting that Defendant hired a woman for the EC position in order to avoid a lawsuit; the Court has described the timetable involved in this case only to illustrate one of the possibilities that led the *Perry* opinion to reject the argument raised by Defendant.

[3]The Court has discussed the "comparative qualifications" issue with respect to the prima-facie-showing discussion, because that is how Defendant raised it.  The Court notes, however, that the hiring of a more-qualified applicant would normally not be considered at the prima-facie-case

Finally, Defendant argues Plaintiff was not qualified for the EC position because she had not been employed with Defendant for six months at the time she applied for the promotion, and Defendant's policies required six months of service before a promotion could be awarded. As Plaintiff points out, however, she would have been with Defendant for six months by the time the position was filled. No evidence has been submitted indicating that it is the date of application for a promotion, rather than the date the position is filled, that controls with respect to the six-month issue. Furthermore, Plaintiff was explicitly told she would not be considered for the position due to her degree status (or lack thereof). No mention was made of the six-month requirement, and she was never told she should not apply for the position until after the six-month time period had passed. There is a question of fact, therefore, as to whether Plaintiff had to be employed with Defendant for six months before she could even apply for a promotion.

Plaintiff is a woman; she applied for the EC position; there is a question of fact as to whether she was qualified for it; her application was rejected without even being considered; and a different person was hired for the position. Therefore, she has made the required prima facie showing for summary-judgment purposes. The Court therefore proceeds to the next step of the *McDonnell Douglas* framework.

Once a prima facie case has been established, the burden shifts to Defendant to proffer a gender-neutral explanation for its actions. *See Perry*, 199 F.3d at 1135. The explanation given by Defendant for the refusal to even consider Plaintiff's application is that she did not have a degree and was not reasonably close to obtaining one, and she therefore lacked the necessary qualifications for the EC position. This is a gender-neutral reason for Defendant's actions, and the burden therefore

---

stage; instead, it would be considered the gender-neutral explanation for Defendant's failure to promote Plaintiff.

shifts back to Plaintiff to introduce evidence indicating the gender-neutral reason is actually a pretext for discrimination. *Id.* The facts adduced by Plaintiff concerning the pretext issue are of two main types: (a) facts indicating that the degree requirement was not truly a job qualification for the EC position, and (b) facts indicating the degree requirement was not enforced against male applicants for EC positions.

There is ample evidence contradicting Defendant's assertion that a college degree, or being reasonably close to obtaining such a degree, was such an important qualification for the EC position that it would preclude consideration of Plaintiff's application for the position. First, Plaintiff testified at her deposition that when she interviewed for the AEC job, she made known her desire for quick advancement to an EC position, due to the fact that the AEC job was a step down from her then-current position with ITT. Lindquist allegedly assured Plaintiff that her lack of a degree would not prevent her from becoming an EC, that her prior work experience qualified her for such a position, and that a degree was no longer a requirement for the position. In addition, she was told that even when a degree had ostensibly been "required" for the EC job, people were hired for the position even though they had no degree.[4]

Another piece of evidence supporting Plaintiff's contention on this issue is the EC job description itself. The description states that the applicant must possess a thorough knowledge of the higher education market and industry as typically obtained through the completion of a bachelor's degree *or equivalent work experience.* According to the description, a bachelor's degree is strongly

---

[4]Of course, in his affidavit Lindquist denies making any such statements. However, at this point the evidence must be viewed in the light most favorable to Plaintiff, and she testified she was told these things. Furthermore, the fact that Plaintiff chose to leave her position with ITT, at a cut in pay, supports her assertion that she expected quick advancement to an EC position, where she could earn more money than she was making with ITT. That expectation may or may not have been based on statements made by Lindquist at the interview; again, however, at this point the Court must draw the inference in favor of Plaintiff.

preferred, but not mandatory.  Furthermore, two years of sales or marketing experience is preferred. This description raises a fact issue as to whether an individual such as Plaintiff, who had two and one-half years of experience in the marketing of higher education, and approximately ten years of sales experience in general, would be precluded from consideration for an EC position, solely on the basis of her lack of a degree or being reasonably close to obtaining a degree.[5]  This is especially true because the overall impact of the evidence presently submitted to this Court indicates Defendant strongly emphasized the sales aspect of the AEC and EC positions, measuring success by the number of students enrolled by the employee and retained by Defendant.  Given this fact, it would seem apparent that a strong work history in the higher education "market" and "industry" could override a poor degree status.

Also important to Plaintiff's argument is the fact that, when Plaintiff inquired of Lindquist concerning the vacant position and her desire to apply for it, he did not inform her she was not qualified for the job.  Instead, he told her she did not need to do anything else to complete her application, but to just keep the "good numbers" coming.

As noted above, Plaintiff also submitted evidence indicating the degree requirement had not been enforced in the past, when males had applied for an EC position.  Some of this evidence cannot be considered by the Court, because Plaintiff has failed to lay a sufficient foundation for such consideration.  This is the evidence concerning the degree status of Danny Ortiz, when he was hired as an EC.  In her affidavit Plaintiff stated, without indicating the basis of her knowledge, that Danny was on academic suspension when he was hired and was not close to having a degree.  There is nothing in Plaintiff's affidavit indicating how she knew this fact, or where she had obtained the

---

[5]The Court acknowledges the affidavit of Debra Baldwin, in which she stated that the degree requirement (or being reasonably close to obtaining one) was a firm policy of Defendant.  Again, however, the evidence must be viewed in the light most favorable to Plaintiff.

information.  Therefore, Plaintiff's assertion cannot be considered for summary-judgment purposes.  *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995) (under Rule 56, evidence offered in opposition to a motion for summary judgment must be made on personal knowledge, set forth facts that would be admissible in evidence, and show affirmatively that the person providing the evidence is competent to testify as to the matters set forth in the evidence).

Plaintiff has, however, submitted admissible evidence concerning Manny Ortiz, Danny's brother.  Manny was hired in 1996, at a time when a degree was supposedly "required" for the EC position.  When he was hired, he had no degree.  Furthermore, the evidence submitted to the Court raises a serious question concerning the number of credit hours Manny had obtained at the time he was hired.  Defendant, apparently attempting to obscure that information, has produced evidence showing only that, with transfer credits and credits given for Manny's "experiential learning" (credits given for life experiences, based on essays written about those experiences), Manny was able to obtain a degree from Defendant within 15 months following his hire date.  Plaintiff submitted a transcript showing Manny had obtained approximately 30 credits from Defendant when he was hired as an EC.  This transcript does not show transfer credits.  Therefore, the parties have submitted insufficient facts to allow the Court to determine with clarity Manny's credit-hours status on his date of hire.  What is clear, however, is the following:  when a degree was a requirement, not simply a preference, for the EC position, Defendant made an exception for Manny, who was far short of his degree at the time; on the other hand, after a degree became a strong preference, rather than a requirement, Defendant refused to even consider Plaintiff's application for an EC position, despite her extensive sales experience and her specific experience marketing higher education.  This evidence raises an issue of fact as to whether Defendant treats male applicants for EC positions differently than female applicants.

9

The above discussion shows there are questions of fact as to whether having a degree, or being reasonably close to having a degree, was truly a requirement for the EC position, and whether that requirement (if it existed) was waived more readily for males than females.  Therefore, summary judgment will be denied on Plaintiff's gender discrimination claim.

**Retaliation Claim:**  To establish a prima facie case of unlawful retaliation under the *McDonnell Douglas* test, Plaintiff must prove:  (1) she engaged in protected opposition to discrimination; (2) Defendant took adverse action against her contemporaneously or subsequent to the protected activity; and (3) there is a causal connection between such activity and Defendant's actions.  *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993).  Plaintiff maintains her protected opposition consisted of her complaints to Lindquist, after her application for the EC position was rejected, concerning her belief that males were treated differently with respect to the degree issue than were females.  She also argues Defendant took adverse action against her as a result of her transfer to the Kirtland Air Force Base office, Defendant's refusal to allow her to transfer back after a few weeks, and a reprimand she was given for her tardiness and absence from the office on one occasion.  As a matter of law, this does not meet the requirements of an actionable adverse employment action.

The Tenth Circuit liberally defines the phrase "adverse employment action," applying a case-by-case approach that examines the unique factors relevant to the situation at hand.  *See Trujillo v. New Mexico Dep't of Corrections*, 1999 WL 194151 (10th Cir. 1999).  Some of the unique factors in this case are as follows:  (1) Plaintiff was not involuntarily transferred to the Kirtland office; she was offered the transfer as an opportunity to "strut her stuff," and accepted the offer voluntarily; (2) Plaintiff was told before she accepted the transfer that the job responsibilities at Kirtland would be different than those of an AEC at the main campus; (3) Plaintiff had only been at the Kirtland office

10

for a few weeks before she asked to transfer back to the main campus; and (4) there is no evidence the reprimand for tardiness or absence from the office affected Plaintiff's employment in any way.

There can be no question that the voluntary acceptance of an offer to transfer to a different office, at the same rate of pay and with no loss of benefits, cannot be considered an adverse employment action.  Plaintiff, however, argues that she was misled as to the desirability of the Kirtland position, and in effect was "tricked" into accepting the transfer.  There is no evidence in the record, however, tending to show that Tammy Fernandez, the person offering Plaintiff the transfer, knew the position would not be satisfactory to Plaintiff.  Therefore, there is no evidence, only Plaintiff's inadmissible speculation, that Plaintiff was deliberately misled into transferring to Kirtland, in retaliation for her complaints.

Furthermore, having voluntarily transferred to Kirtland, Plaintiff cannot reasonably have expected to be transferred back to the main campus after just a few weeks.  Where a lateral transfer is actually the equivalent of a promotion, the refusal to allow such a transfer can be considered an adverse employment action.  *See Trujillo*.  In this case, however, transfer back to the main campus was not the equivalent of a promotion.  The evidence submitted to the Court indicates the Kirtland position offered a greater challenge and opportunity for professional development than did AEC positions at the main campus.  Plaintiff acknowledges that she was expected to perform the tasks not only of an AEC, but at times those of an AC and a finance officer as well.  As Fernandez informed her, the Kirtland position was an opportunity for Plaintiff to be more than just an AEC, even though her rate of pay and position title would remain the same.  The refusal to allow Plaintiff to transfer back to the main campus, then, cannot be considered a de facto denial of a promotion.  In fact, it appears to have been the opposite -- a refusal to allow Plaintiff to, in effect, take a step backward to

11

a less challenging position. This does not meet the criteria of an adverse employment action as discussed in *Trujillo*, with respect to denials of lateral transfers.[6]

Finally, there is ample authority for the proposition that a reprimand, which has no effect on an employee's pay, or terms and conditions of employment, cannot be considered an adverse employment action. *See Johnson v. E.A. Miller, Inc.*, 1999 WL 94827 (10th Cir. 1999) (isolated instance of unwarranted reprimand is not an adverse employment action). Even if the reprimand was unfair and unwarranted, therefore, it cannot be the basis of a Title VII retaliation claim.

Since Plaintiff has failed to raise an issue of fact as to whether an adverse employment action resulted from her complaints, summary judgment will be granted on her retaliation claim.

**Breach of Covenant of Good Faith and Fair Dealing:** As Defendant argues, New Mexico law has declined to recognize a cause of action for breach of the covenant of good faith and fair dealing in an employment situation, if the employment contract is at will. *Bourgeous v. Horizon Healthcare Corp.*, 872 P.2d 852, 856 (N.M. 1994). Defendant has proffered evidence indicating Plaintiff's employment with Defendant was an at-will relationship; the employment application indicates Defendant had the right to terminate Plaintiff's employment at any time. Plaintiff has submitted no evidence contradicting this assertion, and has not argued that her employment actually was not on an at-will basis. Therefore, summary judgment will be granted in favor of Defendant on this claim.

---

[6]Even if the denial of Plaintiff's request for a lateral transfer back to the main campus could be considered an adverse employment action, this claim would not survive summary judgment. Defendant proffered a legitimate, non-retaliatory reason for the denial – Plaintiff had been at the Kirtland office only a few weeks, and Ms. Fernandez wanted Plaintiff to give the position more time to see if the difficulties could be ironed out. Furthermore, as Plaintiff herself admitted, she was considered the best AEC available for the Kirtland position. Plaintiff has submitted no evidence indicating these considerations were pretexts for retaliatory motives.

**Punitive Damages:** Defendant argues that Plaintiff has raised a claim for punitive damages as a separate cause of action, and maintains the claim must be dismissed. The Court, however, views Plaintiff's complaint as simply requesting an award of punitive damages, based on the underlying causes of action. Given the preceding discussion of the claims raised in this case, the only cause of action remaining for trial will be the discrimination claim. Defendant maintains the facts of this case do not support an award of punitive damages, because there was no evidence of malice or reckless indifference to Plaintiff's rights. It is premature, however, to decide the question at this point. The degree of culpability of a defendant is typically an issue for the jury to decide, after all the evidence has been presented. The Court therefore declines to eliminate this issue from the case at this stage.

### Conclusion

Based on the foregoing discussion, the Court will grant Defendant's motion for summary judgment in part and deny it in part.

### ORDER

A Memorandum Opinion having been entered this date, it is hereby ORDERED that Defendant's motion for summary judgment (Doc. 27) be, and hereby is, GRANTED in part and DENIED in part.

Dated this 26th day of June, 2001.

BRUCE D. BLACK
United States District Judge

13

**ATTORNEYS**:

**For Plaintiff**:
Dennis W. Montoya
1905 Lomas Blvd. N.W.
Albuquerque, New Mexico 87104

**For Defendant**:
Tibor Nagy, Jr.
James K. Mackie
Snell & Wilmer L.L.P.
One South Church Ave., Suite 1500
Tucson, Arizona 85701

Marshall G. Martin
Stanley K. Kotovsky, Jr.
Hinkle, Hensley, Shanor & Martin
500 Marquette N.W.
Albuquerque, New Mexico 87102